UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* Application of <br><br> GRUPO UNIDOS POR EL CANAL S.A., <br> Applicant, <br><br> To obtain discovery pursuant to 28 U.S.C. § 1782 | Case No. 14-mc-80277-JST   (DMR) <br><br> **ORDER RE: MOTION TO COMPEL, MOTION TO INTERVENE, MOTION TO QUASH** <br><br> Re: Dkt. Nos. 11, 13, 13-1 |

Before the court are three motions: (1) a motion by Grupo Unidos por el Canal ("GUPC") to compel URS Corporation and URS Holdings ("URS") to provide documents to GUPC pursuant to a subpoena authorized by this court, Docket No. 11; (2) a motion to intervene pursuant to Federal Rule of Civil Procedure 24 filed by Autoridad del Canal de Panama ("ACP"), Docket No. 13; and (3) ACP's motion to quash the subpoena, Docket No. 13-1.

For the reasons set forth below, ACP's motion to intervene is **granted**, GUPC's motion to compel is **denied**, and ACP's motion to quash is **granted**.

## I.   BACKGROUND

GUPC is a Panama-based company, jointly owned and operated by four global construction firms. Menes Decl. [Docket No. 2] Ex. 1 at 6-7. In August 2009, GUPC's member companies entered into a contract (the "Contract") with ACP—a legal entity of the Republic of Panama—to build a new set of locks on the Panama Canal (the "Canal Project"). GUPC Section 1782 Appl. [Docket No. 1] ¶ 3; Contract [Docket No. 13-4]. GUPC was formed for the purpose of performing this work, which is ongoing.

### A. The Governing Documents

#### 1. Contract

The Contract contains an arbitration clause that provides that any dispute arising from the Canal Project shall be subject to a private arbitration venued in Miami and conducted under the Rules of Arbitration of the International Chamber of Commerce ("ICC"). Contract § 20.6(a), (e). "In addition to the [ICC] Rules, the arbitration shall be conducted according to the International Bar Association Rules on the Taking of Evidence in International Commercial Arbitration ["IBA Rules"]." Contract § 20.6(b). The Contract specifies that arbitrations "shall be decided in law (within the meaning of Panamanian law)" and the "arbitration agreement and the arbitration shall be governed by the United States Federal Arbitration Act ["FAA"], 9 U.S.C. §§ 1 et seq." Contract § 20.6(d), (f).

#### 2. Terms of Reference

On December 28, 2013, GUPC and several co-claimants commenced an arbitration against ACP (the "Arbitration") pursuant to the arbitration clause of the Contract. On July 24, 2014, the parties to the Arbitration executed the "Terms of Reference," an agreement regarding the procedures and rules of the Arbitration. Hoffman Decl. Ex. G [Docket No. 13-7].

The Terms of Reference state that the Arbitration "shall be governed by: (i) the United States Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.; (ii) the ICC Rules in force as of 1st January 2012; (iii) these Terms of Reference; and (iv) the IBA Rules on the Taking of Evidence in International Commercial Arbitration . . . ." *Id.* at ¶ 65.

The parties also agreed to "grant the Arbitrators the power to issue procedural orders on specific procedural issues when needed," and specified that "[t]he procedural timetable will be determined by way of procedural order after consultation with the Parties." *Id.* at ¶¶ 67, 74.

#### 3. Procedural Order

In a procedural order dated August 11, 2014 ("Procedural Order"), the Arbitral Tribunal determined the sequence and timing of the Arbitration proceedings. Hoffman Decl. Ex. H [Docket No. 13-8]. Discovery begins on May 29, 2015 with the parties' requests for production of documents. *Id.* at 2. On June 16, 2015, the parties may file "[r]equests to the Arbitral Tribunal for

2

production of documents if any" pursuant to paragraphs 3.4 and 3.6 of the Procedural Order." *Id.* Additional relevant terms from the Procedural Order will be discussed in greater detail below.

### B.   GUPC's Section 1782 Application

On September 30, 2014, GUPC filed an *ex parte* application under 28 U.S.C. § 1782, requesting that this court issue an order compelling URS to produce certain documents. GUPC Section 1782 Appl. ¶¶ 7-10. GUPC sought to obtain certain documents from URS Corporation and URS Holdings, two United States companies headquartered in San Francisco that had worked as environmental and engineering consultants to ACP in connection with the canal expansion, and that had performed an Environmental Impact Assessment, a Community Engagement Plan, and an Environmental Management Plan for the Canal Project. GUPC Section 1782 Mem. [Docket 1-1] at 2-3.

In its Section 1782 application, GUPC never noted the Miami venue of the Arbitration, instead describing it in conclusory terms as an "international arbitration." *See* GUPC Section 1782 Appl. ¶ 5 ("GUPC . . . submitted a dispute with ACP regarding the Project to international arbitration under the Rules of Arbitration of the ICC, by filing a Request for Arbitration with the Secretariat of the ICC International Court of Arbitration in Paris, France"); GUPC Section 1782 Mem. at 1 ("The arbitration, submitted to the International Court of Arbitration in Paris, France, is governed by the Rules of Arbitration of the ICC."), 4 (noting that the request for arbitration was submitted to the ICC secretariat in Paris, and that the arbitration will be determined under Panamanian law by three arbitrators from Spain, England, and Belgium, but not noting the Miami venue of arbitration), and 6-8 (arguing that "ICC arbitration" constitutes a "proceeding in a foreign or international tribunal").

GUPC's Section 1782 application was likewise evasive about the private nature of the Arbitration.[1] While the application noted that GUPC and ACP had entered into the Contract,

---

[1] As discussed at length below, a central question in this matter is whether Section 1782 applies to "private" tribunals, such as private arbitration, or only governmental or quasi-governmental tribunals. GUPC must have known this at the time, yet chose to bury the issue when making its original *ex parte* (i.e., unopposed) application. GUPC's lack of transparency does not affect the outcome of this case. Nevertheless, the court notes that such tactics are not helpful.

3

GUPC did not mention the arbitration clause of the Contract. Nor did GUPC inform the court that it had initiated the Arbitration pursuant to the arbitration clause, instead noting simply that GUPC had "submitted a dispute with ACP regarding the Project to international arbitration under the Rules of Arbitration of the ICC."[2]

On October 27, 2014, the court granted the *ex parte* application and permitted GUPC to deliver a subpoena on URS. Order [Docket No. 10] at 3-5. The court specifically noted that *ex parte* applications under Section 1782 are "typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery." *Id.* at 5 (quoting *In re Republic of Equador*, No. C-10-80255-CRB (EMC), 2010 WL 3702427, at *5 (N.D. Cal. Sept. 15, 2010)).

On November 10, 2014, GUPC served URS with a copy of this subpoena. Vasquez Decl. [Docket 11-2] Ex. A at 2-3. URS initially cooperated with GUPC by identifying and supplying responsive documents and inviting GUPC's counsel to review potentially responsive documents at URS's Oakland office. Mot. to Compel [Docket No. 11] at 2. However, on December 15, 2014, ACP sent a letter to URS saying that it had "recently been made aware of" GUPC's subpoena, and requesting that URS "refuse to permit further review" of "documents issued pursuant to that order. URS immediately informed GUPC that it could not proceed with the discovery. URS Opp'n. [Docket No. 12] at 1. At the time, GUPC's attorney was already en route to Oakland to review URS's documents. Mot. to Compel 2-3.

### C. Relationship Between URS and ACP

ACP has separate contracts with URS that are not the subject of the Arbitration (the "URS Contract"). Hoffman Decl. Ex. F. ACP contends that it has unlimited rights in and exclusive

---

[2] The cases cited by GUPC in its *ex parte* application involved both private arbitral tribunals as well as arbitrations conducted pursuant to international treaties, so it was not clear that the Arbitration is one of the former. *See* GUPC Section 1782 Mem. at 7 (citing, inter alia, *In re Veiga*, 746 F.Supp.2d 8, 22-23 (D.D.C. 2010) (finding that arbitration conducted under the Bilateral Investment Treaty between the United States and Ecuador under the rules of the United Nations Commission on International Trade Law ("UNCITRAL") rules was a "foreign or international tribunal")).

4

ownership of all data produced by URS as a result of the URS Contract. *Id.* § 14.2 (The ACP shall have unlimited rights in all data produced by the Contract exclusively as a result of its performance of this Contract."); *id.* § 15 ("All materials prepared by [URS] specifically and exclusively for ACP pursuant to this agreement shall be owned exclusively by ACP."). Furthermore, ACP contends that it has a contractual right to certain confidential documents related to the Canal Project within URS's possession, and that URS may not release or distribute these documents without URS's prior explicit consent. URS Contract § 12.

### D. Motions

On December 17, 2014, GUPC filed the motion to compel, requesting that the court order URS to comply with its subpoena and to pay the travel costs incurred when GUPC's attorney made an unproductive trip to Oakland. URS takes no position on the validity of GUPC's Section 1782 subpoena, characterizing this question as part of a "discovery dispute" between GUPC and ACP, but does oppose GUPC's request for payment of its attorney's travel costs.

On January 5, 2015, ACP filed a motion to intervene in GUPC's ex parte application for an order under 28 U.S.C. § 1782. If granted permission to intervene, ACP seeks to quash GUPC's Section 1782 subpoena on the grounds that GUPC has not actually met the statutory requirements governing the issuance of such subpoenas, and that discretionary considerations counsel against permitting the discovery requested.

## II.    MOTION TO INTERVENE

### A. Legal Standards

Under Federal Rule of Civil Procedure 24(a), a court must grant an applicant's request for intervention in an action if: (1) the applicant's motion is timely; (2) the applicant "claims an interest relating to the property or transaction which is the subject of the underlying action"; (3) the applicant "is so situated that the disposing of the action may as a practical matter impair or impede [its] ability to protect that interest"; and (4) the applicant's interest is not adequately represented by the existing parties to the action. *See* Fed. R. Civ. P. 24(a); *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (citing *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir.1993)). The applicant's interest in the action must be "significantly protectable," meaning

5

it is "is protected under some law, and . . . there is a 'relationship' between [the applicant's] legally protected interest and the plaintiff's claims." *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (citation omitted).  A party seeking to intervene as of right has the burden of showing that these four elements are met, but Rule 24's requirements are broadly interpreted in favor of intervention.  *See Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citation omitted).  This is because "[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts.  By allowing parties with a practical interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court." *City of Los Angeles*, 288 F.3d at 398.

Federal Rule of Civil Procedure 24(b) governs permissive intervention.   Under this rule, a district may permit any party to intervene if it has: (1) established an independent grounds for jurisdiction; (2) filed a timely motion; and (3) demonstrated that its claim or defense and the main action have a question of law or fact in common.  *See* Fed. R. Civ. P. 24(b); *City of Los Angeles*, 288 F.3d at 403.  "A motion for permissive intervention pursuant to Rule 24(b) is directed to the sound discretion of the district court." *San Jose Mercury News, Inc. v. U.S. Dist. Court—N. Dist. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999) (citations omitted).   "[I]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

For the purpose of reviewing a motion to intervene, a court must accept a proposed-intervener's "well-pleaded, non-conclusory allegations" and evidence as true.  *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819-20 (9th Cir. 2001).

**B.     Analysis**

ACP asserts that it is entitled to intervene in this proceeding as a matter of right pursuant to Rule 24(a).  Alternatively, ACP argues that the court should exercise its discretion to permit ACP to intervene pursuant to Rule 24(b).

The court first turns to the question of permissive intervention.   GUPC does not dispute

6

that ACP meets the jurisdictional requirement. Indeed, the court exercises federal question jurisdiction over GUPC's application for discovery pursuant to 28 U.S.C. § 1782, which is the sole issue in this proceeding. *See Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (jurisdictional requirement stems from "concern that intervention might be used to enlarge inappropriately the jurisdiction of the district courts," which "does not apply . . . in federal-question cases when the proposed intervenor is not raising new claims"). However, GUPC argues that ACP's motion to intervene is untimely; that ACP's claims do not share a common question of law or fact as GUPC's application; and that permitting intervention would cause prejudice to GUPC. The court considers each argument in turn.

### 1. Timeliness

In determining whether a motion to intervene is timely, a court considers : "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay. *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (citing *County of Orange v. Air Calif.*, 799 F.2d 535, 537 (9th Cir. 1986)). "Timeliness is a flexible concept, [and] its determination is left to the district court's discretion." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (citation omitted). "[T]he mere lapse of time . . . is not necessarily a bar to intervention." *Alisal*, 370 F.3d at 921 (citation omitted). "Under . . . longstanding [Ninth Circuit] precedent, a party seeking to intervene must act as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation." *Peruta v. Cnty. of San Diego*, 771 F.3d 570, 572 (9th Cir. 2014) (quotation and formatting omitted).

GUPC alleges that "ACP's action comes at a late stage in this discovery action." GUPC Opp'n. [Docket No. 22] at 6. The court granted GUPC's *ex parte* application on October 27, 2014, and GUPC served the subpoena on URS on November 10, 2014. GUPC did not notify ACP that it was seeking documents from URS for use in the Arbitration.[3] ACP learned of the existence

---

[3] Both the Contract and the Terms of Reference provide that the Arbitration shall be governed by the IBA Rules. *See* Contract § 20.6(b), Terms of Reference ¶ 65. IBA Rule 3.9 provide that where a party seeks to obtain discovery from a third party "from whom the Party cannot obtain the Documents on its own," the party "may . . . ask [the Arbitral Tribunal] to take whatever steps are

of the subpoena on URS in mid-December 2014, in the course of challenging a different Section 1782 application by GUPC for discovery in a different district.  Mot. to Intervene Reply [Docket No. 24] at 3, Ex. B at 1.  ACP contends that shortly thereafter, it began preparing the instant motions, which it filed on January 5, 2015.  This is not an especially long delay. *See, e.g.*, *Day v. Apoliona*, 505 F.3d 963, 965-66 (9th Cir. 2007) (allowing the State of Hawaii to intervene and petition for rehearing two years after the start of a case); *Carpenter*, 298 F.3d at 1125 (finding that a motion to intervene was timely even though it was filed 18 months after the commencement of a case).

GUPC also contends that ACP's intervention will "disrupt GUPC's evidence gathering to its prejudice."  GUPC Opp'n. at 6.  This contention is implausible given that discovery in the Arbitration is not even scheduled to begin until May 29, 2015.

Under the circumstances, the court finds that ACP's motion to intervene is timely.[4]

### 2. Question of Law or Fact in Common

GUPC argues that this court should deny permissive intervention because "ACP has failed to allege a legitimate interest in [the] proceeding." GUPC Opp'n 8-9.  GUPC then refers the court to its numerous arguments regarding whether ACP has a "significantly protectable interest" in the proceeding as required for mandatory intervention under Rule 24(a).

This argument conflates the standards governing permissive intervention with those applicable to intervention as of right.  In order to qualify for permissive intervention, a potential

---

legally available to obtain the requested Documents, or seek leave from the Arbitral Tribunal to take such steps itself."  IBA Rule [Docket No. 13-5] 3.9.  The rule also appears to have a notice requirement for such discovery.  *See id.* (the party "shall submit such request to the Arbitral Tribunal and to the other Parties in writing").  ACP and GUPC dispute whether this rule, when read with other provisions in the governing agreements, required GUPC to provide notice of the Section 1782 application to ACP.  The court need not resolve this dispute in order to rule on the present motion.

[4]  GUPC argues that timeliness must be considered in light of Federal Rule of Civil Procedure 45, which states that a "person commanded to produce documents" must serve his or her objection "before the earlier of the time specified for compliance or 14 days after the subpoena is served."  Fed. R. Civ. P. 45(d)(2)(B).  However, GUPC does not offer any authority for the proposition that third-party intervenors must file a motion to quash a subpoena within the same 14-day deadline that a party must meet when objecting to a subpoena served upon it.  The court is unaware of any such requirement.

8

intervenor need only show that it has a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *Los Angeles*, 288 F.3d at 403. ACP's motions to intervene and to quash indisputably share many common questions of law and fact with GUPC's underlying Section 1782 application, i.e., whether GUPC's request for discovery meets the statutory requirements of 28 U.S.C. § 1782, and, if so, whether the discretionary factors identified in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) counsel in favor of granting GUPC's application. Consequently, ACP has satisfied this requirement.

### 3. Prejudice and Undue Delay

As a final matter, the court must consider whether ACP's motion to intervene will prejudice the adjudication of GUPC's rights, or cause undue delay. Fed. R. Civ. P. 24(b)(3). Permissive intervention may be denied if the addition of the proposed intervenor would inject new issues into a dispute, make the same arguments as an existing party, or unnecessarily prolong a proceeding. *See UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 414 (N.D. Cal. 2004) (denying permissive intervention because addition of new party would "necessitate the consideration of extraneous legal and factual issues," unrelated to the original party's claim); *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (affirming denial of permissive intervention where proposed intervenor's interests were adequately represented by existing parties and permitting intervention would cause undue delay).

No such concerns are present here. ACP's intervention will not inject a new issue into the dispute. The central issues are the same: whether GUPC's discovery request meets the statutory requirements of Section 1782 and whether the discretionary *Intel* factors weigh in favor of granting the request. In addition, ACP's interests are not adequately represented by any current party to this discovery action—URS takes no position on the validity of GUPC's subpoena, and has stated that this issue is a dispute between that GUPC and ACP. URS Opp'n at 1.

The only prejudice identified by GUPC is that "ACP's Motion already has added undue delay to URS's complying with the subpoena" by requiring motion practice. GUPC Opp'n at 8. Additional motion practice regarding the appropriateness of GUPC's discovery request is alone

9

1  insufficient to show undue delay.  *See Su v. Siemens Indus., Inc.*, No. 12-CV-03743-JST, 2013
2  WL 3477202, at *3 (N.D. Cal. July 10, 2013) (finding that prospective of additional motion
3  practice, by itself, is not enough to establish prejudice).
4        In sum, because (1) ACP's motion to intervene was timely filed; (2) ACP's motion to
5  quash shares common questions of law and fact with GUPC's Section 1782 application; and (3)
6  GUPC has not credibly identified any prejudice or undue delay it will suffer as a result of ACP's
7  intervention, ACP's motion to intervene pursuant to Rule 24(b) is **granted.**  Because the court
8  finds that permissive intervention is appropriate under Federal Rule of Civil Procedure 24(b), it
9  declines to consider whether ACP is entitled to intervention as a matter of right.

### III.    MOTION TO QUASH

**A.    Legal Standards**

GUPC's application was brought pursuant to 28 U.S.C. § 1782, which states as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).  The purpose of Section 1782 is "to provide federal-court assistance in the gathering of evidence for use in a foreign tribunal." *Intel*, 542 U.S. at 247.  Section 1782 has the "twin aims" of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* at 253.

A district court is authorized to grant a Section 1782 application where (1) the person from whom the discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a "foreign or international tribunal," and (3) the application is made by the foreign or international tribunal or "any interested

1  person." 28 U.S.C. § 1782(a); *see also Intel*, 542 U.S. at 246.

2  However, simply because a court has the authority under Section 1782 to grant an

3  application does not mean that it is required to do so. *Id.* at 264. The Supreme Court has

4  identified several discretionary factors that a court should take into consideration in ruling on a

5  Section 1782 request:

> (1) whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid;
>
> (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court jurisdictional assistance;
>
> (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and
>
> (4) whether the subpoena contains unduly intrusive or burdensome requests.

*Id.* at 264-65.

ACP does not contest the first and third statutory requirements of Section 1782, i.e., whether URS can be found in the Northern District of California and GUPC is an "interested person." However, ACP contends that because it is a private arbitration, the Arbitration does not qualify as a "tribunal." ACP further asserts that the Arbitration's Miami venue disqualifies it from being considered "foreign or international."

### B.  Whether the Arbitration is a "Tribunal"

The Ninth Circuit has not addressed whether a private contractual arbitration is a foreign or international tribunal under Section 1782.[5] The only appellate courts to have addressed this issue

---

[5] Several courts have summarized the development of case law in the federal courts on this issue. *See, e.g.*, *In re Hallmark Capital Corp.*, 534 F.Supp.2d 951 (D. Minn. 2007); *La Comision Ejecutiva Hidro–Elecctrica Del Rio Lempa v. El Paso Corp.*, 617 F.Supp.2d 481 (S.D.Tex. 2008), aff'd *El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa*, 341 Fed.Appx. 31, 34 (5th Cir. 2009); *In re Application of Operadora DB Mexico, S.A. DE C.V.*, 2009 WL 2423138, No. 09-cv-383-ORL-22-GJK (M.D. Fla. Aug. 4, 2009); *In re Winning (HK) Shipping Co.*, No. 09-22659-MC, 2010 WL 1796579 (S.D. Fla. April 30, 2010); *In re Dubey*, 949 F. Supp. 2d 990 (C.D.

11

are the Second and Fifth Circuits. Both held that private arbitrations are not foreign or international tribunals under Section 1782.[6] *See Nat'l Broad. Co. v. Bear Stearns & Co.*, 165 F.3d 184 (2d Cir. 1999); *Republic of Kazakhstan v. Biedermann Int'l,* 168 F.3d 880 (5th Cir. 1999).

Subsequent to these two decisions, the Supreme Court decided *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241 (2004), the seminal case exploring the parameters of Section 1782. In *Intel*, Advanced Micro Devices sought assistance from a federal court pursuant to Section 1782 for discovery related to a proceeding it initiated against Intel before the Directorate–General for Competition (DG-Competition) of the Commission of the European Communities ("European Commission"), an entity that enforces European competition laws and regulations. *Id.* at 254. "The *Intel* Court was not faced with—and did not address—the question of whether a private arbitral tribunal is a foreign or international tribunal under Section 1782." *Operadora*, 2009 WL 2423138 at \*6. *Accord Comision*, 617 F.Supp. at 485 ("[T]he Supreme Court has not addressed the application of § 1782 to arbitral tribunals, not even in dicta."); *Dubey*, 949 F.Supp.2d at 994 ("The *Intel* court never addressed this issue and instead focused its discussion on whether a 'tribunal' includes 'quasi-judicial agencies' such as the European Commission."). Instead, the court considered four questions regarding the scope of Section 1782: (1) whether a

---

Cal. 2013), *appeal dismissed* (Aug. 27, 2013);

[6] GUPC contends that the Eleventh Circuit concluded that a private arbitration was a "foreign or international tribunal" in *In re Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 685 F.3d 987, 996 (11th Cir. 2012) (finding a private arbitration to be a "tribunal" within meaning of Section 1782 because "it meet[s] the functional criteria articulated in *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241 (2004)). However, that decision has no precedential value, as it was vacated and superceded by a later decision by the Eleventh Circuit, in which the court disclaimed its earlier ruling and explicitly declined to answer the question of whether a private arbitration can be considered a tribunal under Section 1782. *See Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 n. 4 (11th Cir. 2014) ("We decline to answer [whether the arbitration is a 'tribunal'] on the sparse record found in this case. The district court made no factual findings about the arbitration and made no effort to determine whether the arbitration proceeding in Ecuador amounted to a section 1782 tribunal . . . Thus we leave the resolution of the matter for another day.").

complainant before the European Commission is an "interested person" under Section 1782; (2) whether the proceeding before the European Commission qualified as a "tribunal"; (3) whether a proceeding must be pending or imminent for an applicant to invoke Section 1782; and (4) whether Section 1782 contains a foreign-discoverability requirement. *Id.* at 246-47, 253.

In determining the second question, the *Intel* court noted that Section 1782 had undergone a "complete revision" in 1964, during which "Congress deleted the words 'in any judicial proceeding pending in any court in a foreign country,' and replaced them with the phrase 'in a proceeding in a foreign or international tribunal.'" *Id.* at 248-49 (emphasis omitted). The Supreme Court reasoned that through the 1964 revisions, Congress intended to broaden the ambit of Section 1782 to apply not only judicial proceedings but also to administrative and "quasi-judicial proceedings." *Id.* at 257-58 ("Congress understood that change to provide the possibility of U.S. judicial assistance in connection with administrative and quasi-judicial proceedings abroad.") (formatting and quotation omitted). As further support for this proposition, the *Intel* court cited the Senate Report and two footnotes from a law review article authored by Professor Hans Smit, who served as the Reporter to the International Rules Commission. *Id.* at 258 (citing Smit, *International Litigation under the United States Code*, 65 Colum. L.Rev. 1015, 1026–27 nn. 71, 73 (1965)). The citation to Smit included a parenthetical in which the court quoted the following language from the footnotes: "[T]he term 'tribunal' . . . includes investigating magistrates, administrative and *arbitral tribunals*, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts." *Id.* (ellipsis in original, emphasis added). The court then "examined the function and procedures of the European Commission, finding that its role as a first-instance decisionmaker, its ability to permit the gathering and submission of evidence, its authority to determine liability and impose penalties, its ability make a final disposition, and the judicial reviewability of the final decisions were key factors in holding that it had 'no warrant to exclude the European Commission . . . from §1782(a)'s ambit.'" *Dubey*, 949 F. Supp. 2d at 993 (quoting *Intel*, 542 U.S. at 258 and referencing *id.* at n. 9).

Two words from a law review article quoted by the Supreme Court in support of a

different proposition have spawned disharmony in the courts regarding whether Section 1782 applies to private arbitrations established by contract. Some courts, relying heavily on *Intel*'s citation to Professor Smit's view that the term "tribunal" includes "arbitral tribunals," have found that private arbitrations established by contract are "tribunals" within the meaning of Section 1782. *See In re Roz Trading Ltd.*, 469 F.Supp.2d 1221 (N.D.Ga. 2006); *Hallmark*, 534 F.Supp.2d at 956; *In re Application of Babcock Borsig AG*, 583 F.Supp.2d 233 (D.Mass. 2008); *Comision Ejecutiva Hidroelectrica del Rio Lempa v. Nejapa Power Co., LLC*, No. CIV.A. 08-135-GMS, 2008 WL 4809035, at *1 (D. Del. Oct. 14, 2008); *Winning*, 2010 WL 1796579 at *7. These courts have found that the Second and Fifth Circuit's pre-*Intel* determinations that private arbitrations are not "tribunals" are no longer persuasive after *Intel*. *See, e.g., Babcock*, 583 F.Supp.2d at 239 ("I do not find the reasoning in [*NBC*] and [*Biedermann*] to be persuasive, particularly in light of the subsequent Supreme Court decision in *Intel*."); *Roz*, 469 F.Supp.2d at 1226 ("Both of these cases were decided five years before *Intel.* Their reasoning, and particularly that of [*NBC*], is materially impacted by *Intel*."). *See also Winning*, 2010 WL 1796579 at *7; *Hallmark*, 534 F.Supp.2d at 956.

Other courts have also examined the issue post-*Intel* and concluded that private arbitrations are not "tribunals" for purposes of applying Section 1782. *See Comision*, 617 F.Supp.2d at 486; *Operadora*, 2009 WL 2423138 at *12; *Dubey*, 949 F. Supp. 2d at 993; *In Re an Arbitration in London, England between Norfolk Southern Corp., Norfolk Southern Railway Co., and General Security Insurance Co. and Ace Bermuda, Ltd.*., 626 F.Supp.2d 882 (N.D.Ill. 2009).

Having reviewed the language of Section 1782, its legislative history, and the above cases, this court concludes that private arbitrations established by contract do not fall within the meaning of "tribunal" under Section 1782. The Second Circuit's analysis in *NBC* is especially instructive. There, the court was also considering whether a private arbitration governed by Rules of the ICC was a "tribunal." The court first looked to the language of the statute itself, and concluded that "the term 'foreign or international tribunal' is sufficiently ambiguous that it does not necessarily include or exclude the arbitral panel at issue here." 165 F.3d at 188. Because the court found the language of Section 1782 ambiguous regarding the inclusion or exclusion of private arbitrations, it

14

then "look[ed] to legislative history and purpose to determine the meaning of the term in the statute." *Id.*

Examining the legislative history, the Second Circuit first turned to the House and Senate committee reports on the 1964 amendments to Section 1782. The court noted that the current version of Section 1782 replaced the former language limiting assistance to "judicial proceedings" in any "court" with more expansive language providing discovery assistance to "a proceeding in a foreign or international tribunal." *Id.* at 189. The *NBC* court observed that the House and Senate committee reports stated that "[t]he word 'tribunal' is used to make it clear that assistance is not confined to proceedings before conventional courts," to which the predecessor statute had been expressly limited. *Id.* (quoting H.R.Rep. No. 88-1052, at 9 (1963) and citing S.Rep. No. 88–1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3788). But this expansion of Section 1782's scope was only meant to include governmental entities:

> [I]t is apparent in context that the authors of these reports had in mind only governmental entities, such as administrative or investigative courts, acting as state instrumentalities or with the authority of the state. The House and Senate committee reports, in explaining the choice of the word "tribunal," state that, "[f]or example, it is intended that the court have discretion to grant assistance when proceedings are pending before investigating magistrates in foreign countries." House Report at 9; Senate Report at 3788. The new § 1782 would facilitate the collection of evidence for use "before a foreign administrative tribunal or quasi-judicial agency." *Id.*

*Id.* at 190. The House and Senate committee reports made no reference to private arbitration proceedings, and the *NBC* court reasoned that "[t]he absence of any reference to private dispute resolution proceedings such as arbitration strongly suggests that Congress did not consider them in drafting the statute." *Id.* at 189.

The court then turned to the "legislative history behind the replacement of §§ 270-270g" and found it "even more compelling than that behind the revisions to old § 1782." The court observed that the term "international tribunal" as used in Section 1782 was derived from 22 U.S.C. §§ 270–270g, which the 1964 amendments repealed. The prior version of Sections 270–270g "authorized commissioners or members of international tribunals to administer oaths, to

15

subpoena witnesses or records, and to charge contempt." *Id*. at 189. "There is no question that the [earlier version of Section 270-270g] applied only to intergovernmental tribunals," as Congress had enacted those provisions in "direct response to problems that arose in an arbitration proceeding between the United States and Canada . . . . [and] proceedings before the United States-German Mixed Claims Commission." *Id.* The court stated that "[i]t bears underscoring that those international arbitrations were intergovernmental, not private, arbitrations. More importantly, the old statute applied only to international tribunals 'established pursuant to an agreement between the United States and any foreign government or governments.'" *Id.* at 189-90. The amended Section 1782 broadened the scope of Sections 270–270(g) "by extending the reach of the surviving statute to intergovernmental tribunals not involving the United States." *Id.* at 190. However, the court found "no indication that Congress intended for the new provisions to reach private international tribunals, which lay far beyond the realm of the earlier statute." *Id.*

The *NBC* court concluded that "[i]n sum, the legislative history reveals that when Congress in 1964 enacted the modern version of § 1782, it intended to cover governmental or intergovernmental arbitral tribunals and conventional courts and other state-sponsored adjudicatory bodies." *Id.* at 190. It found that Congress' "silence with respect to private tribunals is especially telling because a significant congressional expansion of American judicial assistance to international arbitral panels created exclusively by private parties would not have been lightly undertaken by Congress without at least a mention of this legislative intention." *Id.*

The *NBC* court did not stop with the legislative history of the 1964 amendments; it also noted that the broad American-style discovery afforded by Section 1782 would be at odds with the purpose of private arbitration:

> The popularity of arbitration rests in considerable part on its asserted efficiency and cost-effectiveness—characteristics said to be at odds with full-scale litigation in the courts, and especially at odds with the broad-ranging discovery made possible by the Federal Rules of Civil Procedure. *See Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (advantages of arbitration are that it is "usually cheaper and faster than litigation; ... can have simpler procedural and evidentiary rules; ... normally minimizes hostility and is less disruptive of ongoing and future business dealings among the parties") (quoting H.R.Rep. No. 97–

16

> 542, at 13 (1982), U.S. Code Cong. & Admin. News 1982 at 765, 777)). Few, if any, non-American tribunals of any kind, including arbitration panels created by private parties, provide for the kind of discovery that is commonplace in our federal courts and in most, if not all, state courts. If the parties to a private international arbitration make no provision for some degree of consensual discovery inter se in their agreement to arbitrate, the arbitrators control discovery, and neither party is deprived of its bargained-for efficient process by the other party's tactical use of discovery devices.

*Id.* at 190-91.

Finally, the *NBC* court also noted that interpreting Section 1782 to allow "such broad discovery in proceedings before 'foreign or international' private arbitrators would stand in stark contrast to the limited evidence gathering provided in 9 U.S.C. § 7 for proceedings before domestic arbitration panels."[7] *Id.* at 191. "Such an inconsistency not only would be devoid of principle, but also would create an entirely new category of disputes concerning the appointment of arbitrators and the characterization of arbitral panels as domestic, foreign, or international." *Id.* Indeed, the current dispute fulfills the prediction of the *NBC* court, as GUPC attempts to characterize a private arbitration taking place on American soil as "foreign or international," in order to obtain discovery that would not be permitted in a domestic private arbitration.

In *Biedermann*, the Fifth Circuit followed *NBC* and also held that a private arbitral proceeding is not a foreign or international tribunal under Section 1782. 168 F.3d at 881. Like the *NBC* court, *Biedermann* found the term "foreign or international tribunal" to be ambiguous regarding the inclusion or exclusion of private arbitrations. The Court reviewed the legislative history of the 1964 amendments and found "no contemporaneous evidence that Congress contemplated extending § 1782 to the then-novel arena of international commercial arbitration." *Id.* at 882. The Fifth Circuit also noted the policy concerns with extending Section 1782 to private

---

[7] FAA § 7, codified at 9 U.S.C. § 7, provides statutory authority for invoking the powers of a federal district court to assist private commercial arbitrators in obtaining evidence. "Under this provision, arbitrators may subpoena witnesses and direct those witnesses to bring material documentary evidence to an arbitral hearing; if witnesses fail to comply, the district court for the district in which the arbitrators are sitting may compel compliance with such subpoenas." *NBC*, 165 F.3d at 187 (citing 9 U.S.C. § 7). The methods for obtaining evidence under Section 7 of the FAA are "more limited than those under § 1782" in several ways, including that Section 7 confers authority upon *arbitrators*, not the parties to the arbitration, and only upon the district court in which a majority of arbitrators are sitting. *Id.*

17

1    arbitrations. *Id.* at 883 ("Empowering arbitrators, or worse, the parties, in private international

2    disputes to seek ancillary discovery through the federal courts does not benefit the arbitration

3    process. Arbitration is intended as a speedy, economical, and effective means of dispute

4    resolution."). Finally, the court acknowledged the discord between Section 7 of the FAA and a

5    broad reading of Section 1782. *Id.* ("It is not likely that Congress would have chosen to authorize

6    federal courts to assure broader discovery in aid of foreign private arbitration than is afforded its

7    domestic dispute-resolution counterpart.").

8    *Biedermann* was explicitly upheld in the Fifth Circuit's unpublished post-*Intel* decision in

9    *El Paso Corp.*, *supra* n. 4, 341 Fed. Appx. at 34 ("[W]e remain bound by our holding in

10   *Biedermann*."). The *El Paso* court reviewed *Intel,* and found that nothing in that case affected the

11   analysis of the *Biedermann* court:

> The question of whether a private international arbitration tribunal also qualifies as a "tribunal" under § 1782 was not before the [*Intel*] Court. The only mention of arbitration in the *Intel* opinion is in a quote in a parenthetical from a law review article by Hans Smit. That quote states that "the term 'tribunal'. . . includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts." Nothing in the context of the quote suggests that the Court was adopting Smit's definition of 'tribunal' in whole.
>
> Moreover, none of the concerns raised in *Biedermann* regarding the application of § 1782 to private international arbitrations [i.e., unprincipled inconsistency between Section 7 of FAA and Section 1782, and "destroy[ing] arbitration's principal advantage as a speedy, economical, and effective means of dispute resolution"] were at issue or considered in *Intel*.

21   *Id.*

22   This court concurs with the reasoning of the *NBC* and *Biedermann* courts regarding the

23   ambiguity of the statutory language and the clearer instruction of the legislative history and policy

24   considerations, and concludes that private arbitrations established by contract are not "tribunals"

25   under Section 1782. This court further concurs with *El Paso*, *Operadora*, and *Dubey* in finding

26   that nothing in *Intel* affects the analysis of the *NBC* and *Biedermann* courts. *See Operadora*, 2009

27   WL 2423138 at *1 ("[T]he reasoning of the district courts in *Roz Trading*, *Babcock*, and *Hallmark*

28   that the Supreme Court has embraced § 1782 assistance for private arbitral proceedings . . . . relied

primarily on the Supreme Court's inclusion of the phrase 'arbitral tribunal' in a parenthetical quotation. The quotation is lifted from a footnote in Professor Smit's *International Litigation* article, which the Supreme Court cited merely to support the proposition that § 1782 applies to administrative and quasi-judicial proceedings. This Court is confident that the Supreme Court would not have expanded § 1782 to permit discovery assistance in private arbitral proceedings and reversed *NBC* and *Biedermann*—without even acknowledging their existence—in a parenthetical quotation supporting an unrelated proposition."); *Dubey*, 949 F.Supp.2d at 994-95 ("*Intel* did not intend to expand the meaning of 'foreign or international tribunal' to include private arbitrations" because the *Intel* court did not address the issue, and courts finding otherwise "relied too heavily on the Supreme Court's inclusion" of the Smit quote).

Even among those courts concluding that the term "tribunal" does not necessarily extend to private arbitrations, there is a split as to whether Section 1782 categorically excludes private arbitrations[8] or whether a court must undergo a "functional analysis" of the proceedings to

---

[8]  Much has been made of the *Intel* court's apparent aversion to putting "categorical limitations" on Section 1782. *See, e.g.*, *Babcock*, 583 F.Supp.2d at 240 ("[T]he Supreme Court in *Intel* repeatedly refused to place 'categorical limitations' on the availability of § 1782(a)."). But *Intel* did not reject *all* categorical limitations on Section 1782. Rather, it "reject[ed] the categorical limitations Intel would place on the statute's reach," *Intel*, 542 U.S. at 255, which were whether Section 1782 has foreign-discoverability requirement, whether non-litigants may be "interested person[s]" under Section 1782, and whether a tribunal must be pending or "imminent" for applicant to invoke Section 1782. *Id.* at 253-54. The *Intel* majority also rejected the categorical limitations suggested by the dissent. *Id.* at 263, n. 15 ("[W]e reject the rules the dissent would inject into the statute," e.g., excluding from § 1782's reach discovery not available under foreign law and under domestic law in analogous circumstances).
   The *Intel* court did note that "Congress left unbounded by categorical rules the determination whether a matter is proceeding 'in a foreign or international tribunal,'" and so *Intel* "suggest[ed] guides for the exercise of district-court discretion." *Id.* But the guidelines suggested by *Intel* were directed to the question of whether the governmental entity at issue—the DG Competition of the European Commission—qualified as a tribunal. Nothing in *Intel* requires a functional analysis where the proceeding is before a non-governmental entity, and nothing in *Intel* prohibits *all* categorical limitations on the meaning of the term "tribunal." A federal court should be able to determine that certain types of decision-making forums are outside the purview of Section 1782 without having to engage in an inefficient, resource-consuming functional analysis. For example, a federal court should be able to reject a Section 1782 application from a caucus of Belgian private school students empowered to arbitrate a dispute arising under their academic rules without having to first consider the caucus' role as a first-instance decisionmaker. *Accord Norfolk*, 626 F.Supp.2d at 885 ("[A]lthough the *Intel* Court acknowledged the ways in which

19

determine whether it is a "tribunal."  On the one hand, the *NBC* and *Biedermann* courts concluded that the term "tribunal" categorically excludes private arbitrations.  *Accord Dubey*, 949 F.Supp.2d at 995; *Comision*, 617 F.Supp.2d at 486-87.  On the other hand, the *Operadora* court found that "[b]ecause neither the language of § 1782 or its legislative history clearly indicates that it applies to private arbitral proceedings, the Court . . . must analyze the function of the ICC Panel . . . . [and] consider the criteria endorsed by *Intel* as well as other functional characteristics of the ICC Panel to determine whether it is a foreign or international proceeding under § 1782."  2009 WL 2423138 at *9.  Because the court concludes that private arbitrations established by contract are categorically excluded from the meaning of "tribunal" under Section 1782, it declines to consider the functions and procedures of the Arbitration.[9]

### IV.  GUPC'S MOTION TO COMPEL

Because the court declines to permit the discovery requested by GUPC pursuant to Section 1782, GUPC's motion to compel URS to respond to that discovery is **denied**, as is its request for travel cost sanctions against URS.

### V.  CONCLUSION

For the above-stated reasons, GUPC's motion to compel is **denied**, ACP's motion to intervene pursuant to Federal Rule of Civil Procedure 24(b) is **granted**, and ACP's motion to quash is **granted.**

**IT IS SO ORDERED.**

Dated: April 21, 2015

_____
DONNA M. RYU
UNITED STATES MAGISTRATE JUDGE

---

Congress has progressively broadened the scope § 1782, it stopped short of declaring that any foreign body exercising adjudicatory power falls within the purview of the statute.").

[9] The parties also dispute whether the Arbitration, which is being conducted in Miami, qualifies as "foreign or international" within the meaning of Section 1782.  Because the court concludes that a private arbitrations established by contract are not "tribunals" and therefore do not meet the statutory requirements of Section 1782, it declines to consider whether an arbitration conducted in the United States can ever be considered "foreign or international."

20